# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEPHEN A. ADAMS, <br>     Plaintiff, <br><br> v. <br><br> OFFICER CHRISTOPHER TORTORELLO and CITY OF EVANSTON, <br>     Defendants. | Case No: 13 C 455 <br><br> Judge Ronald A. Guzmán |

## ORDER

For the reasons stated below, the City of Evanston's motion to dismiss the claims against it [37] is granted. The City of Evanston is dismissed as a defendant.

## STATEMENT

Stephen Adams filed suit alleging excessive force against Evanston police officer Christopher Tortorello and a custom and policy of a failure to train, equip and supervise its police officers under 42 U.S.C. § 1983 against the City of Evanston ("City"). The City moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below the motion is granted.

According to Plaintiff, on January 21, 2011, Tortorello, who was on duty, fired two shots at Plaintiff during an arrest with at least one shot striking Plaintiff in the shoulder. (Am. Compl., Dkt. # 23, ¶¶ 10, 19.) Plaintiff alleges that he, who is of small build, was unarmed and leaning against a car when he was shot. (*Id*. ¶ 14.) Plaintiff further alleges that Tortorello did not have a flashlight, a gun-mounted light, or any vision-enhancement equipment when he shot Plaintiff. (*Id*. ¶¶ 15-17.)

The City moves to dismiss the claim against it for failure to state a claim. When considering a Rule 12(b)(6) motion to dismiss, the Court accepts the well-pleaded factual allegations as true and draws all reasonable inferences from them in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). However, a complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'" and set forth facts sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To establish municipal liability [under § 1983 and *Monell*], a plaintiff must show the existence of an official policy or other governmental custom that not only causes but is the moving force behind the deprivation of constitutional rights." *Teesdale v. City of Chi.*, 690 F.3d 829, 833 (7th Cir. 2012) (internal quotation marks omitted).

Failure to Train, Supervise and Equip[1]

"[A]n inadequacy in police training can serve as a basis for liability under Section 1983, but only where the failure to train amounts to deliberate indifference to the citizens the officers encounter." *Matthews v. City of E. St. Louis*, 675 F.3d 703, 709 (7th Cir. 2012). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (citation omitted). However, the Supreme Court has stated that "'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference." *Id*. at 1361 (citations omitted). In other words, there may be the "rare" case of "single-incident liability" in which "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id*. The Supreme Court gave the "hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Id*. As the Supreme Court noted:

> Given the known frequency with which police attempt to arrest fleeing felons and the "predictability that an officer lacking specific tools to handle that situation will violate citizens' rights," . . . a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the "highly predictable consequence," namely, violations of constitutional rights.

*Id*. (citation omitted).

Plaintiff contends that the same logic applies here under a single-incident theory. (Pl.'s Resp., Dkt. # 40, at 3.) According to Plaintiff, he alleges that "a city's decision not to train, supervise, and/or provide tools to the . . . officers relating to the constitutional limits on the use of deadly force . . . could reflect the city's deliberate indifference to the 'highly predictable consequence,' namely, violations of constitutional rights." (*Id*. at 5.) However, Plaintiff's allegations do not, in fact, address a general failure to advise or educate the police force on constitutional limitations. Rather, all of Plaintiff's allegations address the City's purported failure to provide its police officers with specific training, supervision and equipment regarding the performance of their duties at night or in low-light situations. (Am. Compl., Dkt. # 23, ¶¶ 28-37.) He alleges that "Evanston Police officers . . . encounter a recurring situation of having to operate or use their firearms and/or deadly or excessive force at night, or at times when there is no light illuminating the officers['] surroundings or low light illuminating the officers['] surroundings," (id. ¶ 29), and that the City failed to train, supervise and equip officers for these situations. (*Id*. ¶¶ 25-

---

[1] The allegations in Plaintiff's complaint are not entirely clear with respect to the claims he is making, but because the parties address the three alleged failures together, so does the Court.

2

41.)

This distinction is important because, as the Supreme Court noted in *Connick*, "the nuance of the allegedly necessary training" is relevant. *Connick*, 131 S. Ct. at 1363. The *Connick* court stated that the hypothetical discussed above in which single-incident liability might apply "assumes that the armed police officers have no knowledge at all of the constitutional limits on the use of deadly force." *Id*. Here, however, Plaintiff does not allege a complete lack of training with respect to basic constitutional limitations. Rather, he alleges that the City's officers were not trained about a particular situation that might arise during an arrest – that in which little or no light is present – and "[t]hat sort of nuance simply cannot support an inference of deliberate indifference." *Id*. This is so because § 1983 "does not provide plaintiffs or courts *carte blanche* to micromanage local governments throughout the United States" with respect to the training they provide. *Id*. "'[P]rov[ing] that an injury or accident could have been avoided if an [employee] had had better or more training . . . sufficient to equip him to avoid the particular injury-causing conduct' will not suffice." *Id*. at 1363-64 (internal quotation marks and citation omitted) (alterations in *Connick*). Here, Plaintiff alleges that the City's officers were not "properly" trained or equipped, should have received "more" or "better" training. (Am. Compl., Dkt. # 23, ¶¶ 37, 41.) This is the type of nuanced claim that the Supreme Court has rejected in the context of a § 1983 failure to train claim against a municipality.

Moreover, Plaintiff's allegation that the City's failure to train, supervise and equip its officers with respect to performing their duties at night and in low-light situations was the moving force behind his injury is conclusory and unsupported by facts. According to Plaintiff:

> If Defendant Police Officer was equipped with a flash light on his gun, subjected to regular and more frequent low-light and no light training, trained with better programs in the dark, had proper sightings on his weapon, or had night vision goggle[s] for even one eye, he would not have used such excessive force in effectuating the arrest.

(*Id*. ¶ 41.) But Plaintiff alleges no facts in support of this logical jump. Any number of reasons could have led to Plaintiff being shot that have nothing to do with the fact that the arrest occurred at night. Certainly other individuals have been arrested in the City at night without being shot. Any link between Plaintiff being shot at night and a purported to failure to train, supervise or equip police officers for work in the dark or low-light situations is "much too attenuated." *Johnson v. Cook Cnty.*, — Fed. Appx. —, 2013 WL 2005236, at *4 (7th Cir. May 15, 2013) (citing *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) (stating that there must be "a causal connection, or affirmative link" between the conduct complained of and the party sued)). Even if the alleged failure to train, supervise or equip played a part in Plaintiff being shot "it is not enough to show that a widespread practice or policy was a *factor* in the constitutional violation; it must have been the *moving* force." *Id*. at *3. Plaintiff has alleged no facts supporting such a conclusion. It is not a logical inference that a failure to train an officer on arrests in dark or low-light situations was the moving force behind the Officer Tortorello's alleged use of excessive force against Plaintiff, an assessment of which "requires careful attention to the facts and circumstances of each particular

3

case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The City's motion to dismiss the failure to train, supervise and equip claim is granted. Because Plaintiff has now had two opportunities to plead his failure to train, supervise and equip claim, the dismissal is with prejudice.

### Negligent Supervision and Punitive Damages

The City also contends that any state law negligent supervision claim must be dismissed as untimely under the Illinois Local Government and Governmental Employees Tort Immunity Act ("Act"), 745 Ill. Comp. Stat. 10/8-101(a). However, Plaintiff makes clear in his response that he is not alleging a state law claim for negligent supervision. Thus, this part of the City's motion is denied as moot. Moreover, Plaintiff concedes that he may not seek punitive damages against the City. Therefore, the Court grants the City's motion to strike this request for relief.

For the reasons stated above, the City's motion to dismiss the *Monell* claim is granted and the City is dismissed as a defendant.

**Date**: August 20, 2013

_____
**Ronald A. Guzmán**
**United States District Judge**